UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FEDERAL TRADE COMMISSION,

    Plaintiff,

v.                                                  Case No.:  2:20-cv-542-SPC-MRM

SPM THERMO-SHIELD, INC.,
PETER J. SPISKA, and GEORGE
P. SPISKA,

    Defendants.
_____/

## **OPINION AND ORDER**[1]

Before the Court is the Federal Trade Commission's Motion for Summary Judgment (Doc. 61), along with Defendants' response (Doc. 67), and the FTC's reply (Doc. 68).

The FTC brings this enforcement action under Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b), to obtain permanent injunctive relief for Defendants' acts in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). The FTC alleges that SPM Thermo-Shield, Inc., and its principals—a father-son duo—Peter Spiska (President) and George Spiska

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

(Vice President), make false or unsubstantiated performance claims about SPM's architectural coatings products (which include Thermo-Shield Roof Coating, Thermo-Shield Exterior Wall Coating, and Thermo-Shield Interior Wall Coating).[2] The Court grants the Motion for the below reasons.

## BACKGROUND

Joseph Ravner acquired SPM in the 1990s and Peter Spiska has been involved with SPM since 1994 as a distributor, and later as a director. The Spiskas bought SPM in 2012 after Ravner lost ownership in bankruptcy. Along with the acquisition of SPM came a box of paper materials that included test reports, certifications, and studies for SPM products. The Spiskas did not know the exact origins of the statements made in the materials, but they used them to create the company website. The website claimed that Thermo-Shield Coatings have certain insulation values or insulation equivalent values known as "R-values," and that the coatings will save consumers money on energy costs. A product's R-value is a measure of its resistance to heat flow through a thickness of material: the higher the R-value, the greater the insulating power. The Spiskas also provided the test reports and studies to its distributors.

---

[2] The FTC lumps together both the roof and wall coatings in the First Amended Complaint, defining all three coatings as "Thermo-Shield Coatings." (Doc. 38 at 2). The Court does the same.

Over a year before suing, the FTC informed Defendants of its investigation into their R-value and other energy savings claims and requested substantiation for those claims. Defendants responded with the package of materials they acquired from Ravner (*see* list of materials, Doc. 67 at 8-9), and demurred at first, claiming, "All of our statements on our website and literature are substantiated and documented by the numerous tests provided." (Doc. 67 at 9). But Defendants didn't take exception for long. By August 2019, Defendants had removed references to R-values from their website and marketing materials and now concede that Thermo-Shield Coatings do not have R-value or R-value equivalents, to which their own expert, Hashem Akbari, agrees. In fact, Defendants say they knew their products had no such R-value since they got involved with SPM, back in 1994. They acknowledge that tests referenced on the SPM website reporting R-values were not up to date with science and were based on studies from decades ago. Defendants still claim that their products have a high solar reflective index, resulting in energy savings to their customers.

In July 2020, FTC filed this action, seeking permanent injunctive relief, rescission or reformation of contracts, restitution, refund of monies paid, disgorgement of ill-gotten monies, and any other relief the Court deems just and proper. (Doc. 1 at 13). The Court struck the allegations for equitable monetary relief as inconsistent with *AMG Capital Mgmt., LLC v. FTC*, 141 S.

3

Ct. 1341 (2021) (Doc. 37), and the FTC filed a First Amended Complaint seeking only injunctive relief (Doc. 38).

The First Amended Complaint contains three counts. First is a count for making false or unsubstantiated performance claims. In this count, the FTC alleges that Defendants violated the FTC Act by misleading consumers into the mistaken belief that:

> Thermo-Shield Coatings have insulation values or insulation equivalent values of R-20, R-21, R-22, and R-40 when applied as Defendants instruct.
>
> Using Thermo-Shield Coatings will save consumers money, including, for example, by saving them up to 50% on heating and cooling costs.

The second count is for false establishment of R-values, alleging that testing does not establish represented R-values. And the third count for means and instrumentalities alleges that Defendants furnished resellers with promotional materials that make false or misleading representations.

The R-value claims reappeared on SPM's website during this action—in 2020—because of what SPM says is a third-party's error. The claims were removed within two or three days. Further, Defendants admit that their conduct was ongoing when the FTC filed their Amended Complaint in June 2021. (Doc. 39 ¶ 23).

4

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a material fact is in genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden to show the lack of genuinely disputed material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If carried, the burden shifts onto the nonmoving party to point out a genuine dispute. *Beard v. Banks*, 548 U.S. 521, 529 (2006). At this stage, courts view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002).

## DISCUSSION

**A. R-Value Claims (Counts 1 and 2)**

Section 13(b) of the FTC Act authorizes the FTC to sue in federal court when it has reason to believe a defendant is violating or about to violate Section 5 of the FTC Act. 15 U.S.C. § 53(b). Section 5(a) of the FTC Act prohibits "unfair or deceptive acts or practice in or affecting commerce." "To establish

5

liability under section 5 of the FTCA, the FTC must establish that (1) there was a representation; (2) the representation was likely to mislead customers acting reasonably under the circumstances, and (3) the representation was material." *F.T.C. v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003).

Counts 1 and 2 concern R-value claims. Defendants concede that the R-value claims were false and removed them from their website and marketing materials in 2019, before this suit was filed. (Doc. 67 ¶¶ 26, 30, 31, 32, 34). Defendants argue summary judgment is not appropriate because Section 13(b) does not authorize the FTC to seek redress solely for past harms, citing *FTC v. Shire Viropharma, Inc.*, 917 F.3d 147 (3d Cir. 2019), which held that "Section 13(b) does not permit the FTC to bring a claim based on long-past conduct without some evidence that the defendant 'is' committing or 'is about to' commit another violation." *Id.* at 156. Defendants assert that the FTC does not put forward any facts that could show a reasonable basis to believe that they are violating or will imminently violate the law.[3]

The Eleventh Circuit has addressed this issue. In *FTC v. USA Financial, LLC*, defendants argued that the district court erred by granting a permanent injunction to enjoin them from engaging in future violations of the FTC under

---

[3] Defendants' assertion here is also set forth as their Second Affirmative Defense. Defendants argue that the FTC has not put forward facts that dispute this defense. Not so. As discussed, the FTC presents undisputed facts of Defendants' past conduct to show that the R-value claims are likely to recur.

Section 13(b) based on past violations that ceased before the FTC sued and had not been shown as likely to recur. 415 F. App'x 970 (11th Cir. 2011). Under such circumstances, "permanent injunctive relief is appropriate if the defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future." Id. at 975 (quoted authority omitted). The district court found that permanent injunctive relief was necessary to prevent future violations because of the formation of new corporate entities, and the Eleventh Circuit agreed. Id.

The Court finds here that the FTC has presented undisputed facts of Defendants' past conduct to show that the R-value claims are likely to recur. Although Defendants concede and testified under oath that the R-value claims are false, that the claims were removed, and that the claims will not reappear, the claims did reappear after this lawsuit was filed. Although Defendants say this was because of a third-party's error, the R-value claims stayed up on the website for as long as three days, unnoticed by Defendants. At a minimum, this shows that Defendants have not taken steps on their own to ensure that the false R-value claims do not reappear, or that they will take swift action to remove such claims if they appear, making injunctive relief appropriate. At bottom, the FTC Act authorizes the FTC to sue when it has reason to believe that a defendant is about to violate Section 5 of the Act. 15 U.S.C. § 53(b).

### B. Energy Cost Savings Claims

The FTC offers several advertisements from Defendants' website and marketing materials of energy cost savings claims it says are false or unsubstantiated. The FTC relies on the report of its expert witness, David Yarbrough, who reviewed the advertisements and opined that the cost savings claims lack sufficient technical justification and are unsupported by competent and reliable scientific evidence. (Doc. 61-7 at 304). Defendants' expert does not say otherwise, and Defendants do not deny placing the advertisements but say either that the claims have been taken down or that the claims are substantiated. Specifically, Defendants claim that their products can reduce energy bills by up to 40% or 50%. If an establishment claim "states a specific type of substantiation," the "advertiser must possess the specific substantiation claimed." *Removatron Int'l Corp. v. FTC*, 884 F.2d 1489, 1492 n.3 (1st Cir. 1989). Defendants say that Thermo-Shield Coatings' energy savings component is something that end users and distributors are interested in. So, any representation about energy savings is material. *See F.T.C. v. Atlantex Assocs.*, No. 87-0045-CIV-NESBITT, 1987 WL 20384, at *11 (S.D. Fla. Nov. 25, 1987) *aff'd,* 872 F.2d 966 (11th Cir. 1989).

The facts which Defendants have admitted establish that their energy savings claims are unsubstantiated. Both sides say that Thermo-Shield Coatings might offer energy savings, but that any such savings would vary

8

widely based on several factors, most important being that savings vary widely depending on the climate. (Doc. 61 ¶¶ 38, 42). Defendants also admit that if Thermo-Shield is applied to a well-insulated white roof, there is no energy savings, and admit that they used a "broad brush" in making an "up to" 40% savings claim on their website, and the coatings do not provide up to 40% heating and cooling savings in all building types. (Doc. 61 ¶ 45). But these factors are not disclosed to consumers and that is the problem. (*See* Doc. 61 ¶ 41, Peter Spiska admits marketing materials for Thermo-Shield Coatings have not clearly disclosed that location is critical to energy savings.). Even Defendants own expert, Dr. Akbari, says that any claim that Thermo-Shield users will save up to 50% on their heating and cooling costs should be "really, really qualified." (Doc. 61-7 at 430). The factors Dr. Akbari considers important are the building type, climate, level of construction, and building age.[4] (Doc. 61-7 at 431). Yet Defendants include no such qualifiers when advertising to their consumers.

Defendants state in their Response that they "have provided a plethora of substantiation and explanation that show their claims relating to the energy savings benefits provided by Thermo-Shield Coatings are true." (Doc. 67 at

---

[4] Dr. Akbari addresses only roof coatings.

9

19). Yet Defendants include no citation to evidence to support such a statement, nor do they submit any evidence opposing summary judgment.

At bottom, because Defendants misrepresented Thermo-Shield Coatings' energy cost savings, they are subject to liability under 15 U.S.C. § 45(a).

### C. Count 3 – Means and Instrumentalities

For the same reasons as Counts 1 and 2, summary judgment is appropriate as to Count 3. Count 3 alleges that Defendants furnished resellers with promotional materials that make false or misleading representations. (*See* Doc. 61 ¶ 41, Peter Spiska admits marketing materials for Thermo-Shield Coatings have not clearly disclosed that location is critical to energy savings.). An advertisement is "illegal if it contains a false claim inducing the purchase of a product inferior to the product the consumer bargained for." *Carter Prods., Inc. v. F.T.C.*, 323 F.2d 523, 528 (5th Cir. 1963).

### D. Form of Injunctive Relief

Under Federal Rule of Civil Procedure 65(d), in every order granting an injunction the Court must describe in detail the act or acts restrained or required. Fed. R. Civ. P. 65(d). The Court has not yet been provided with the form of injunctive relief the FTC requests. The FTC states that if summary judgment is granted, it will provide the Court with a proposed injunction for its review. Defendants have not objected to such a procedure. Thus, the Court

will allow the FTC time to submit a proposed order after the parties have conferred and will delay the entry of judgment until that time.

It seems based on the evidence and expert testimony that the parties should have long ago come to an agreement on the claims. The Court hopes that the parties can work together and stipulate to the form of the injunction.

Accordingly, it is now

**ORDERED:**

The Federal Trade Commission's Motion for Summary Judgment (Doc. 61) is **GRANTED**.

(1) The FTC will file a proposed order of injunctive relief by **April 11, 2022**.

(2) The Court delays the entry of judgment pending the entry of the injunction.

**DONE** and **ORDERED** in Fort Myers, Florida this on March 21, 2022.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record

11